AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>3502 SOUTH STONEY POINT ROAD, ROGERS,<br>ARKANSAS 72758, more particularly described in<br>Attachment A | )<br>)<br>)  Case No. 5: 21-cm-27 ELW<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____Arkansas_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 875(d) | Threats in Interstate Communications |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____  09:47
*Applicant's signature*

Nathan Hopp, Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/20/2021

City and state: Fayetteville, Arkansas

_____
*Judge's signature*

U.S. Magistrate Erin L. Wiedemann
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF 3502 SOUTH STONEY POINT ROAD, ROGERS, ARKANSAS 72758, More particularly described in Attachment A.** | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 41 FOR A SEARCH WARRANT**

I, Nathan Hopp, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 3502 South Stoney Point Road, Rogers, Arkansas 72758 (hereinafter "PREMISES"), which is located in the Fayetteville Division of the Western District of Arkansas, and is further described in Attachment A, for the things described in Attachment B.

2.    I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed since December 3, 2010.  I am currently assigned to the Dallas Division, and within that Division to the Cyber Crime Squad, which is responsible for investigating, among other things, potential violations of federal criminal laws that involve the significant use of computers.  I have received specialized training in the investigation of cybercrimes, including

classes through which I have obtained certifications or other assessments of proficiency in the forensic examination of Windows and Mac operating systems, network security, and cyber-incident response.   Additionally, I have led or participated in numerous cybercrime investigations, including investigations in which computers were used to commit fraud, identity theft, and other financial crimes.

3.     Based on the facts set forth below and the reasonable inferences from those facts, as well as my training and experience, I respectfully submit there is probable cause to believe Zachary Chandler Bell, a.k.a. Eiji Kimura, a.k.a. phoenix214, who resides at the PREMISES, violated federal law, including 18 U.S.C. § 875(d) (Threats in Interstate Communications, hereafter "Target Offense").   Beginning in or around January 2020 and continuing through April of 2020, Bell extorted Appy Health Inc., herein "Appy," through interstate communications by threatening to publicize Appy's proprietary source codes unless Appy paid Bell and others money.   Based on the facts set forth below and the reasonable inferences from those facts, as well as my training and experience, I submit that there is probable cause to believe that evidence, instrumentalities, and fruits of these offenses, as further described in Attachment B, will be found in or at the PREMISES.

4.     The facts in this affidavit come from my personal observations, my review of records, data, and other information obtained in connection with this investigation, my training and experience, and information obtained from other agents and witnesses.   This affidavit is

intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

5.     Appy Health Inc. is a company that at the time of the Target Offense was headquartered in the Eastern District of Texas.  Appy created a mobile application allowing patients and their health providers to connect using their mobile devices.  Appy hired contractors to work on the code that supported Appy's application.  On approximately July 9, 2019, Appy hired Bell as a software contractor to work on Appy's mobile and web applications, specifically, mobile code development and web code development. The same day, Bell signed a non-disclosure agreement with Appy.  As part of his job, Bell was given a unique user account and associated ID.  Bell was also given full access to Appy's mobile and web code to work on and make modifications.  Almost immediately, the relationship between Appy and Bell started to deteriorate resulting in Appy not paying Bell.

6.     In approximately January 2020 and continuing over a period of several months, Bell, using alias "Eiji Kimura," demanded that Appy Health pay Bell, co-worker Shane Skiles, and other third party code developers or else "Kimura" would release Appy's fully functional code in its entirety to the public.  Beginning in approximately January of 2020, Bell, used alias "phoenix214" to post Appy's application code on the open forum GitHub allowing the code to be accessible and obtainable by anyone. In or around March 2020, Bell, using the alias "eiji214" posted Appy's application code on GitHub multiple times.

7.      According to Appy, Facebook user "Eiji Kimura" posted the following on Appy's Facebook page:



8.      A search warrant issued out of the Eastern District of Texas for the Facebook account eiji.kimura.5249, showed the above post was created on January 16, 2020.

9.      According to Facebook, on January 17, 2020, and January 31, 2020, "Kimura" updated his status and didn't recommend Appy Health because "they have to pay their employees first."

10.     On February 5, 2020, Appy sent Bell a letter stating they were conducting an audit of the code Bell created and at the conclusion of the audit, Appy would pay Bell for all unpaid fees and expenses, and payable services performed.

11.     According to Appy, on February 6, 2020, Facebook user "Eiji Kimura" posted the following on Appy's Facebook page: "A typical fake company's job posting which failed to pay employees."

12.     On     February     24,     2020,     "Kimura,"     using     email     account kimuraeiji214@gmail.com, sent Appy's General Counsel William Cavalier an email stating:

> "So I found that you issued a DMCA takedown against my repos[1] on Github. I found that you are on a new hiring spree and still didn't pay the previous employees. Please let me know when you can pay them. Otherwise I will push it to my Bitbucket and other Git repos and post the link on your Facebook and Linkedin pages."

13.     On February 25, 2020, Cavalier sent "Kimura," at kimuraeiji214@gmail.com, an email stating Appy needed forms of identification from Kimura to process the invoices. The same day, "Kimura" responded:

> "I didn't send you any addresses, but please make sure you pay the developers Bill Grimes hired last year."

> "I represent a debt collection company and received several complaints from your previous developers."

> "Please make sure you pay them and let me know. So that we can remove the code repo completely from our pcs."

14.     On February 26, 2020, "Kimura," using telephone number (910) 714-7657, sent Cavalier a text message stating the below:

> "You have 1 day to reply with your right will to pay the invoices. Otherwise, the code repo will be published as I warned before."

15.     From February 26, 2020 to April 2, 2020, "Kimura" sent Cavalier several text

---

[1] Repos is a short name for a source code repository. A source code repository is a place where large amounts of source code can be stored, either publicly or privately.  GitHub is a public code-hosting platform. GitHub users upload code to their platform repositories in order to work on the code alone or in collaboration with others.

messages from telephone number (910) 714-7657. Below are excerpts from the text conversation:

> Kimura: "I never sent you any address, but I have complaints from some of your previous developers about the unprocessed payment"
> Cavalier: "Who are the previous developers you refer to?"
> Kimura: "Shane Skiles, Samuel Thomas and Zachary Bell"
> Kimura: "When can you pay them?"
> Kimura: "I need to hear back from you today"
> Kimura: "You have taken down my Git repos. If you try to fool us, I have to submit all the codebase to several Github and Bitbucket[2] repos and share in public."

16.    On February 27, 2020, Cavalier responded to "Kimura's" email stating:

> "According to your text message this morning, you represent Shane Skiles, Samuel Thomas, and Zachary Bell."

> "As work related information is confidential, please provide the legal name of the company you represent, your title and your corporate address. We also need a copy of your engagement letter."

> "Please also provide all invoices for the above referenced individuals and their dates of service."

17.    The same day, "Kimura" responded to Cavalier's earlier email and stated:

> "I'm not interested in providing you my legal identity. Since you already fooled the developers without fulfilling your obligation, I don't think the legal activities would be better than leading you to pay with your own will."

> "I am quite experienced in handling deadbeats like you."

> "The developers obviously sent you invoices so far. You pay, everything will be all right."

---

[2] Bitbucket refers to a unretrievable place where electronic or digital data goes when it is lost or deleted.

> "Also, I won't reply to any of your emails until you finish the payment based on the invoices they issued."

18.     On March 6, 2020, "Kimura" sent Cavalier a text message from (910) 714-7657 stating: "Please show me the proof of payment".

19.     On March 11, 2020, Bell sent an email from "zacdev@outlook.com" to Cavalier stating a month had passed since Appy sent the letter concerning the code audit. The same day, "Kimura" sent Cavalier a text message from (910) 714-7657 stating: "I found that you have sent a cease and desist letter to Shane without payment. This is unacceptable".

20.     On March 12, 2020, Cavalier responded to Bell at "zacdev@outlook.com" stating the audit was not complete. Cavalier also stated that "Kimura" was threatening to release Appy's code unless Appy paid Bell and that "Kimura" was continuing to represent that he was Bell's authorized representative. The same day, Bell responded stating that the web account used by "Kimura" was not his and Bell never let anyone represent him. Bell also stated the following:

> "About the Appy' code, you will have to talk with other developers as well (I don't remember Mr Kimura's name among the developers). It seems you didn't finish payments to them and some of them had complaints. And that's not what I can help with."

> "Perhaps, you can pay me asasp as he asked and see what would happen."

21.     On March 12, 2020, in a separate email response Bell, from "zacdev@outlook.com," stated: "Only once the payment is cleared, I could help you analyze the code commit history and figure out how he got access to the code."

22.     On March 12, 2020, "Kimura" sent Cavalier a text message from (910) 714-7657 stating the following. The listed URL was a link to "eiji214's" Github posting of Appy's mobile code.

> "So you failed to show the proof of payment, and instead sent a cease and desist letter to your previous developers."
>
> "https://prnt.sc/rf6ncb"
>
> "Let me know when I can publish this. This repo will be removed only when you finished payment and show me the proof"



23.     On April 1, 2020, Bell, forwarded an email to Cavalier. The email purported to be from "Kimura" at kimuraeiji@gmail.com to Bell at zacdev@outlook.com and stated:

"I worked as a subcontractor in Appy. Health and still didn't get paid from them. What about you? Did you get a penny yet?"

"We have to work together to resolve the issue. Let me know if you're interested in working with me to get the payment."

24.     On April 2, 2020, on Appy's Facebook page, "Kimura" didn't "recommend" Appy Health because "they have to pay their developers who worked on their website and mobile app."

A.   Appy Code Posting and IP Address Attribution

25.     Pursuant to a search warrant issued out of the Eastern District of Texas, GitHub provided information showing that on January 17, 2020, at 17:05:11 (UTC), using IP address 89.187.161.220, the GitHub user "phoenix214" created the repository "AppyHealthWeb" on GitHub. The repository contained Appy's fully functional source code for Appy's web-based application.

26.     The user Agent string used to create the GitHub repository was "Mozilla/5.0 (Macintosh; Intel Mac OS X 10_11_6) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/79.0.3945.117 Safari/537.36".   Pursuant to a search warrant issued out of the Eastern District of Texas, Microsoft provided information showing that on January 17, 2020, at 17:04:59 (UTC) and 17:05:57 (UTC), the account "zacdev@outlook.com" (Bell's email address) was using IP address 89.187.161.220, the same IP address used by "phoenix214" to create the AppyHealthWeb repository at the same time.

27.     On January 17, 2020, at 17:16:37 (UTC), also using IP address 89.187.161.220,

the GitHub user "phoenix214" created the repository "AppyHealthMobile" on GitHub. The repository contained Appy's fully functional source code for Appy's mobile-based application.

28.     The user Agent string used to create the repository was "Mozilla/5.0 (Macintosh; Intel Mac OS X 10_11_6) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/79.0.3945.117 Safari/537.36".  Information provided by Microsoft showed at 17:15:57 (UTC) and 17:16:58 (UTC), the account "zacdev@outlook.com" was using IP address 89.187.161.220.  From the information shown above, the same IP address, 89.187.161.220, used by phoenix214 to create the AppyHealthWeb and AppyHealthMobile repositories used by Bell's email account at the same time.



*Figure 1: Phoenix214 GitHub Posting Appy Health Code Captured by Appy Health.*

29.     On March 12, 2020, at 02:04:41 (UTC), using IP address 207.126.94.97, the GitHub user "eiji214" created the repository "AppyHealthMobile."  Information provided by Microsoft showed at 02:03:48 (UTC) and 02:04:47 (UTC), the account "zacdev@outlook.com" was using that same IP address, 207.126.94.97.

30.     On March 12, 2020, at 09:09:30 (UTC), using IP address 207.126.94.98, eiji214 deleted the repository "AppyHealthMobile."  Information provided by Microsoft showed at 09:09:16 (UTC) and 09:09:47 (UTC), the account "zacdev@outlook.com" was using IP address 207.126.94.98.

31.     On March 12, 2020, at 09:09:50 (UTC), using IP address 207.126.94.98, "eiji214" again created the repository "AppyHealthMobile."   Information provided by Microsoft showed at 09:09:47 (UTC) and 09:10:47 (UTC), the account "zacdev@outlook.com" was using IP address 207.126.94.98.

32.     On April 2, 2020, at 15:30:43 (UTC), using IP address 107.150.17.8, "eiji214" created the new repository "AppyHealthWeb."   The user agent string was "Mozilla/5.0 (Macintosh; Intel Mac OS X 10.11; rv:74.0) Gecko/20100101 Firefox/74.0".   Information provided by Microsoft showed at 15:29:47 (UTC) and 15:30:45, the account "zacdev@outlook.com" was using IP address 107.150.17.8.

33.     From March 12, 2020, through April 2, 2020, the repository "AppyHealthMobile" was created twice, deleted once, and had the permission changed from private to public 11 times by "eiji214."   On April 2, 2020, "eiji214" created the repository "AppyHealthWeb."   In each instance occurring over multiple days, when "eiji214" took an account action in GitHub, the same IP address used by "eiji214" was used by Zachary Bell's email account "zacdev@outlook.com."



*Figure 2: Eiji214 GitHub Posting of Appy Health Code Captured by the FBI.*

B. <u>Zachary Bell Attribution</u>

34.    On July 4, 2019, before Bell was employed at Appy, "Kimura" searched for "Zachary Bell" through Facebook.  Bell has since stated he did not know Kimura.

35.    On August 6, 2019, Bell, using email address "zacdev@outlook.com," received an invite for a Skype interview.    Bell's Skype account was listed as "phoenix214@protonmail.com" in the invite.

36.    Pursuant to a search warrant issued out of the Eastern District of Texas, GitHub

showed the contact email for the account "phoenix214" was "phoenix214@protonmail.com" and "kimuraeiji@hotmail.com." The contact email for the GitHub account "eiji214" was "kimuraeiji214@gmail.com." Google provided information showing the recovery email for "kimuraeiji214@gmail.com" was "phoenix214@protonmail.com."

37.    On September 19, 2019, at 08:38:15 (UTC), "Kimura" shared the link https://www.facebook.com/eiji.kimura.5249/posts/976378609388447. The summary stated, "Eiji Kimura Software development for a promising developer A young software developer from Bentonville area is looking to build iOS/Android apps for patients."

38.    Pursuant to a search warrant for the email account "zacdev@outlook.com," Microsoft provided information that showed on September 25, 2019, at 17:02:39 (UTC), Bell sent an email to application@nxtedition.com applying for a job. In the email Bell stated his full name, "Zachary Bell" and he lived in "Bentonville, AR, US."  Bell also placed a link to his GitHub account, "phoenix214," Stack Overflow account, "5092716/zachary-bell", and his resume as shown below:



*Figure 3: Zachary Bell using zacdev@outlook.com to apply to a job.*

39.    Below is Bell's resume for the job posting.  In Bell's resume, he also has links to the GitHub account for "phoenix214," states his address is the 901 Marcus Street, Bentonville, Arkansas, uses telephone number (208) 403-4009, and uses email address "zacdev@outlook.com."  According to Microsoft, the name used to register zacdev@outlook.com was "Zac Bell".



*Figure 4: Bell's resume from  zacdev@outlook.com.*

40.     A Google search for "phoenix214" showed a Stack Overflow[3] profile for Zachary Bell, stackoverflow.com\users\5092716\Zachary-bell.   On February 16, 2020, the Wayback Machine[4] (archive.org) internet archives saved a copy of

---

[3] Stack Overflow is an open online community for developers to learn, share their programming knowledge, and build their careers.

[4] The Wayback Machine is a digital archive of the World Wide Web, founded by the Internet Archive, a nonprofit organization based in San Francisco. It allows the user to go "back in time" and see what websites looked like in the past.

stackoverflow.com\users/5092716/Zachary-bell. The FBI later obtained a screenshot of Bell's Stackoverflow account from the Wayback Machine (see Figure 5 below). The screenshot showed Bell's GitHub user account to be "Phoenix214" and his webpage to be "Zachary-bell.my-free.website."



Figure 5: FBI Capture of Zachary Bell's Stack Overflow Account from the Wayback Archive

41.    On April 13, 2020, the FBI captured the below screenshot (Figure 6) showing a Stack Overflow account for "Eiji Kimura," at https://stackoverflow.com/users/5092716/eiji-kimura.  The Stack Overflow accounts for Zachary Bell and Eiji Kimura show the same Stack Overflow user ID: 5092716.  The two profiles also show the same number of questions posed (19) and questions answered (14) on Stack Overflow. Additionally, the profile titles for both Eiji Kimura and Zachary Bell are the exact same, "Creative Engineer, Developer and

Human," and the two resumes match verbatim.



*Figure 6: FBI Capture of Eiji Kimura's Stack Overflow Account.*

42.     Pursuant to a search warrant issued out of the Eastern District of Texas, Stack Overflow provided information related to user ID 5092716, which resolved to account 6591795.  At the time of the search warrant return the display name for account 6591795 was "Eiji Kimura."  From approximately January 27, 2020 to May 29, 2020, the user agent string was used with account 6591795 was Mozilla/5.0 (Macintosh; Intel Mac OS X 10_11_6) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/79.0.3945.130 Safari/537.36. The user agent string above is the same when account 6591795 is displaying the name Eiji Kimura and

Zachary Bell.

43.     Table 1 shows telephone numbers and email addresses that are associated with 6591795.  Telephone number (910) 714-7657 was the telephone number used to extort Appy as detailed above.  From Stack Overflow, (910) 714-7657 is used by both display names "Eiji Kimura" and "Zachary Bell."  The email address "zacdev@outlook.com" is also used by both "Eiji Kimura" and Zachary Bell.  According to TextNow Inc., telephone number (910) 714-7657 was assigned to the user "eiji.kimura" from September 23, 2019, until at least April 29, 2020.

| Name | Email | Address | Telephone Number |
|------|-------|---------|------------------|
| Eiji Kimura | Kimuraeiji214@gmail.com | Saitama, Japan | 815055340695 |
| Eiji Kimura | zacdev@outlook.com | Bentonville, AR | 208-403-4009 |
| Eiji Kimura | Kimuraeiji214@gmail.com | USA | 208-403-4009 |
| Eiji Kimura | Kimuraeiji214@gmail.com | USA | 219-292-7744 |
| Eiji Kimura | Kimuraeiji214@gmail.com | USA | 910-714-7657 |
| Eiji Kimura | zacbdev@gmail.com | USA | 910-714-7657 |
| Eiji Kimura | Kimuraeiji214@gmail.com | USA | 208-403-4009 |
| Phoenix | Kimuraeiji214@gmail.com | Saitama, Japan | 815055340695 |
| Zachary Bell | zacdev@outlook.com | Bentonville, AR | 208-403-4009 |
| Zachary Bell | Kimuraeiji214@gmail.com | USA | 208-403-4009 |
| Zachary Bell | zacbdev@gmail.com | USA | 910-714-7657 |

Table 1: Stack Overflow 5092716 Account Attribution.

44.     On approximately August 8, 2019, the resume titled, "Zachary Bell (2).pdf" was created.  On approximately August 15, 2019, the resume for Stack Overflow user ID 5092716

was changed.  The account profile on August 15, 2020 was "Zachary Bell."  Figure 7 is an image of the "Zachary Bell(2).pdf", which is the same resume sent by zacdev@outlook.com given in Figure 4 and the same resume Appy had for Zachary Bell.  According to Google, the Google Drive account for kimuraeiji214@gmail.com, contained a resume titled "Zachary Bell – new.docx".



*Figure 7: Stack Overflow resume for 5092716.*

45.     On approximately November 1, 2019, the profile image for Stack Overflow user ID 5092716 was changed to the below image in Figure 8, and is the same image used on Zachary Bell's LinkedIn account.



*Figure 8: Stack Overflow 5092716 Profile Picture.*

46.     On approximately November 26, 2019, at 01:10:23 (UTC), the display name for Stack Overflow user ID 5092716 was changed from "Eiji Kimura" to "Zachary Bell." At approximately 22:57:50 (UTC), the user "Zachary Bell" sent a message to the company Joinstring.com in response to a job posting titled, "Web / Front End Lead (React)".  The email account associated with Bell was zacbdev@outlook.com and the telephone number was (910) 714-7657.

47.     Based on my training and experience and the evidence obtained, the two Stack profiles for "Eiji Kimura" and "Zachary Bell" are one and the same individual.

48.     Table 2 shows excerpts of IP addresses utilized by zacdev@outlook.com and Eiji Kimura's Facebook account, eiji,kimura.5249 that show on the same date, during the same time, the same IP addresses were used by Zachary Bell's Microsoft outlook account and Eiji

Kimura's Facebook account.  In multiple instances, spanning several months, the same IP address was used to access each account at the same time. The IP addresses listed below are part of a VPN network.

| Account | Date | Time (UTC) | IP Address |
|---------|------|------------|------------|
| zacdev@outlook.com | 09/02/2019 | 18:42:19 | 172.104.107.8 |
| eiji.kimura.5249 | 09/02/2019 | 18:42:31 | 172.104.107.8 |
| zacdev@outlook.com | 09/02/2019 | 18:43:11 | 172.104.107.8 |
| zacdev@outlook.com | 10/02/2019 | 19:17:28 | 104.247.128.118 |
| eiji.kimura.5249 | 10/02/2019 | 19:17:41 | 104.247.128.118 |
| zacdev@outlook.com | 10/02/2019 | 19:18:28 | 104.247.128.118 |
| zacdev@outlook.com | 01/16/2020 | 07:16:07 | 89.187.161.220 |
| eiji.kimura.5249 | 01/16/2020 | 07:16:22 | 89.187.161.220 |
| zacdev@outlook.com | 01/16/2020 | 07:16:38 | 89.187.161.220 |
| zacdev@outlook.com | 03/31/2020 | 03:54:41 | 204.44.110.12 |
| eiji.kimura.5249 | 03/31/2020 | 03:54:49 | 204.44.110.12 |
| zacdev@outlook.com | 03/31/2020 | 03:55:42 | 204.44.110.12 |

*Table 2: Bell Email and Kimura Facebook IP Attribution*

49.    Based on the user agent strings captured by the different organizations, the accounts used by Bell, a.k.a. Kimura, were accessed by a Macintosh computer.  For example, the user agent string used by both the GitHub accounts "phoenix214" and "eiji214" was "Mozilla/5.0 (Macintosh; Intel Mac OS X 10_11_6", indicating a Macintosh device was used. This exact same user agent string was used by Stack Overflow account 6591795.  Additionally, the account "zacdev@outlook.com" was accessed using an Apple iPhone. According to GitHub, an authorized device for the account "eiji214" was "Tower for macOS".  According to Google, OnePlus A3010, IMEI numbers 733424917169029 and 863786259272796 were associated with the account kimuraeiji@gmail.com.  According to Facebook, a SM-T350 Samsung Galaxy Tablet was associated with the account "eiji.kimura.5249."

50.    When hired by Appy, Bell listed his address in his W-9 form as 901 Marcus Street, Bentonville, Arkansas 72712, and supplied additional proof of residency such as mail received at that address and his driver's license listing that address.  However, on March 26, 2021, the FBI found that Bell had since moved to the subject PREMISES.  A Benton County tax record showed Bell and his wife are the owners of the PREMISES.  Bell has two vehicles registered in his name: a 2005 Dodge Grand Caravan, Arkansas license's plate 348YBG, VIN 2D4GP44L65R193793 and a 2016 Nissan Leaf, Arkansas license's plate 223YVU, VIN 1N4AZ0CP1GC301863.  Agents have visually observed Bell's vehicles parked at the PREMISES.

51.    Because several people share the PREMISES as a residence, it is possible that the PREMISES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime.  If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

52.    Based on my training and experience, I know that information related to cybercrimes, including accessing email and web accounts, are often contained in files located in computers, tablets, electronic storage devices, and phones.  The evidence located on the electronic media and can be stored for long periods of time and often and easily transported to different locations.

53.     In my experience, cyber actors often transport laptops and other electronic media in their vehicles.  Often these media are used to further criminal activity and evidence of those crimes can often be found in those vehicles.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

54.     As described above and in Attachment B, this application seeks permission to search for records that might be found on the PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media.  Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

55.     *Probable cause.*  I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

> a.    Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file

on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.  Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

56.  *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes

described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the

United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.  Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.  Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation.  Additionally, some information stored within a computer or electronic storage media may provide crucial

evidence relating to the physical location of other evidence and the suspect.  For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data.  Such file data typically also contains information indicating when the file or image was created.  The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera).  The geographic and timeline information described herein may either inculpate or exculpate the computer user.  Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation.  For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an

accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.  I know that when an individual uses a computer for this type of crime, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how

the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

57. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

   a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the

warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

58.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require techniques, including but not limited to computer-

assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

59.    I submit that this affidavit supports probable cause for a warrant to search the PREMISES described in Attachment A and seize the items described in Attachment B.

## REQUEST FOR SEALING

60.    It is respectfully requested that this Court issue an order sealing all papers submitted in support of this application, including the application and search warrant pursuant to the local rules of this Court.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time.  Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted,

Nathan Hopp
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on April 20th         , 2021.

HONORABLE ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

*Property to be Searched*

The property to be searched is: 3502 S Stoney Point Road, Rogers, Arkansas 72758,

further described as a brown brick house set on a lot with a driveway and attached garage,

and pictured below:



## ATTACHMENT B

*Property to be Seized*

All records constituting evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 875(d) (Threats Made in Interstate Communications) and occurring after July 1, 2019, including but not limited to the following:

1. All communications in any form, including but not limited to e-mails, chats, text messages, social media posts, telephonic data, websites, and instant messages, to or from Zachary Bell, Eiji Kimura, eiji214, or phoenix214, referring or relating to Appy Health Inc.

2. Any code, software, program, or application, from or referring to Appy Health Inc.

3. Any information related to the GitHub user phoenix214, eiji214, or Zachary Bell.

4. Any information related to the Stack Overflow account for Zachary Bell, Eiji Kimura, or phoenix214.

5. Any information from TextNow Inc.

6. Any information related to Appy Health Inc., to include but not limited to communications, employment records, payment records, code, software, programs, or applications.

7. Any identification documents for Zachary Bell, Eiji Kimura, eiji214, or phoenix214, to include but not limited to passports, social security cards, driver's licenses, tax documents, property records, lease records or utility records.

8.  Any computers or other digital storage media used as a means to commit the violations described above, including all hardware, configuration information, and packaging associated with the computer.

9.  For any computer or digital storage medium whose seizure is otherwise authorized by this warrant, and any computer or digital storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "computer"):

    a.  evidence of who used, owned, or controlled the computer at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.  evidence of software that would allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    c.  evidence of the lack of such malicious software;

    d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

    f.  evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence;

    g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer;

2

      h.  evidence of the times the computer was used;

      i.  passwords, encryption keys, and other access devices that may be necessary to access the computer;

      j.  documentation and manuals that may be necessary to access the computer or to conduct a forensic examination of the computer;

      k.  records of or information about Internet Protocol addresses used by the computer;

      l.  records of or information about the computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

      m.  contextual information necessary to understand the evidence described in this attachment.

15.     Routers, modems, and network equipment used to connect computers to the Internet.

16.     As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.